UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

DARIN DAVIS
7008 Destiny Hills Drive
Austin, TX 78738

and

CHRISTIAN-ADAIR PARTNERS, LLC,
a Texas limited liability company
7008 Destiny Hills Drive
Austin, TX 78738

       Plaintiffs,

v.

NORTHWOODS MANAGEMENT, LLC,
a Minnesota limited liability company
Hellmuth & Johnson, PLLC, Registered Agent
8050 W. 78th Street
Edina, MN 55439

and

MATTHEW T. ONOFRIO
35 Orchid Ln N
Minneapolis, MN 55447-4010,

       Defendants.

Case No:  25-cv-999

JURY TRIAL DEMANDED

## COMPLAINT

NOW COME Plaintiffs, Darin Davis and Christian-Adair Partners, LLC by their attorneys, Amundsen Davis, LLC and as for their Complaint in this matter, allege as follows:

### PARTIES

1. Plaintiff Darin Davis ("Davis") is an adult resident of the state of Texas presently residing at 7008 Destiny Hills Drive, Austin, TX 78738.

1

2. Plaintiff, Christian-Adair Partners, LLC ("CAP") is a Texas limited liability company with a principal address of 7008 Destiny Hills Drive, Austin, TX 78738. Davis is the sole member of CAP.

3. Upon information and belief, Defendant Northwoods Management, LLC ("Northwoods") is a Minnesota limited liability company with registered agent and address of Hellmuth & Johnson, PLLC, 8050 W. 78th St., Edina, MN 55439.

4. Upon information and belief, Defendant Matthew T. Onofrio ("Onofrio") is an adult resident of the state of Minnesota presently residing at 35 Orchid Ln N, Minneapolis, MN 55447-4010.

5. Upon information and belief, Onofrio is the sole member of Northwoods.

## JURISDICTION AND VENUE

6. This Court has exclusive, original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) based upon diversity of citizenship, as no Defendant holds citizenship in the same state where Plaintiffs hold citizenship and the amount in controversy exceeds $75,000.

7. This Court has personal jurisdiction over Northwoods because it transacts business in Wisconsin and because it engaged in fraudulent activities within the state of Wisconsin related to real property located in Wisconsin, giving rise to the claims herein.

8. This Court has personal jurisdiction over Onofrio because he transacts business in Wisconsin and because he engaged in fraudulent activities within the state of Wisconsin related to real property located in Wisconsin, giving rise to the claims herein.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions occurred in this judicial district, in particular, related to the sale of a parcel of real estate located in this judicial district.

# FACTUAL ALLEGATIONS

**A.     Onofrio is a convicted felon, having pled guilty to bank fraud in 2022.**

10.     On November 17, 2022, a Grand Jury in the District of Minnesota returned an indictment against Onofrio.

11.     Attached as Exhibit A is a true and correct copy of the Indictment filed in the United States District Court, District of Minnesota, Case 0:22-cr-0032 (the "Criminal Fraud Case").

12.     In the Criminal Fraud Case, Onofrio pled guilty to Bank Fraud in violation of 18 U.S.C. § 1344.

13.     Attached as Exhibit B is a true and correct copy of the Plea Agreement and Sentencing Stipulations (the "Plea Agreement") filed in the Criminal Fraud Case.

14.     In Paragraph 3 of the Plea Agreement, Onofrio admitted that "[b]etween approximately 2019 and 2022," he "devised and executed a scheme to defraud federally insured financial institutions in Minnesota, Wisconsin and other states," using "false and fraudulent pretenses, misrepresentations, and omissions of material fact."

15.     In Paragraph 3 of the Plea Agreement, Onofrio admitted that the "proceeds from the fraud scheme totaled at least $35,745,252.91."

**B.     Onofrio did not limit his victims to banks; he also defrauded individual investors.**

**(1)     Northwoods' and Onofrio's "carryback note" fraud scheme.**

16.     Northwoods and Onofrio also defrauded individual investors using a fraud scheme Onofrio referred to as a "carryback note."

17.     The carryback note scheme included one or more of the following elements, but no one transaction known to date was precisely the same:

   a.     Onofrio would represent to an individual that Northwoods would sell real property, or the membership interests in an entity owning real property, to the individual or

      his assigns for the same or just below the purchase price that Northwoods, or another entity controlled by Onofrio, was purchasing the real property from the current owner. In truth, Northwoods, or another entity controlled by Onofrio, would contract to purchase it for millions less than the purchase price Onofrio represented to the individual and the individual or the individual's assigns would end up paying millions more based on Onofrio's lies.

b.    Onofrio would steer the individual to a law firm that he or Northwoods had an existing relationship with to represent the individual.

c.    Onofrio would steer the individual to a bank or banks for the individual to work with to secure financing.

d.    Onofrio or Northwoods would manipulate the bank's financing appraisal or bank financing by, among other things:

      (i)    Lying to the appraiser about the amount of the purchase price Northwoods had the real property under contract;

      (ii)    Causing Northwoods to deliver to the appraiser a purchase agreement that Northwoods signed, but only after fraudulently altering the purchase agreement;

      (iii)    Concealing material facts regarding a comparable sale relied on by the appraiser;

      (iv)    Submitting false personal financial statements of the individual investor; or

      (v)    Transferring money into the individual's account to inaccurately portray the individual's assets.

e.    Defendants would offer the individual or the individual's assigns seller financing or a carryback loan ("Seller Financing Mortgage Loan") to make up the difference, which provided Defendants with a future stream of payments as a result of their carryback note scheme.

**(2)**    **Onofrio and Northwoods defraud Plaintiffs.**

      **(i)**    **Onofrio promises to sell Davis the East Springs Drive Shopping Center.**

4

18. On August 19, 2021, Davis was introduced to Onofrio by a business partner via e-mail.

19. In his email introduction, Davis's business partner advised Onofrio that Davis "might be in need of some bonus depreciation this year" and that he was "buying a building through [Onofrio]" that hadn't "closed yet but the process is going smooth." Further, that it would "cover the Stanton recapture."

20. Onofrio responded that day, asking for a time to connect.

21. Onofrio and Davis connected and communicated on the phone and via e-mails.

22. On September 21, 2021, Onofrio confirms with Davis that Davis can bring up to $1 Million Dollars to closing and can bring in partners if more is needed.

23. Northwood entered into a Commercial Offer to Purchase Agreement with Capitol East Towne, LLC ("CET"), dated as of September 24, 2021, and effective September 29, 2021, amended October 15, 2021 and November 19, 2021, for 2302-2348 East Springs Drive, Madison, WI ("East Springs Drive Shopping Center") (the "CET Purchase Agreement").

24. Onofrio never provided Davis with a copy of the CET Purchase Agreement.

25. Upon information and belief, the CET Purchase Agreement lists the Purchase Price as $10,400,000 (the "CET Purchase Price").

26. On October 5, 2021, Onofrio presents the East Springs Drive Shopping Center property to Davis as a "strong retail investment" at a purchase price of $12,850,000.

27. On October 5, 2021, Northwoods entered into a Commercial Offer to Purchase Agreement with Davis for the sale of the East Springs Drive Shopping Center (the "Davis Purchase Agreement"). The Davis Purchase Agreement was drafted by Onofrio or his affiliates.

28. Line 9 of the Davis Purchase Agreement lists the Purchase Price as $12,850,000.00 (the "Davis Purchase Price").

29. Attached as <u>Exhibit C</u> is a true and correct copy of the Davis Purchase Agreement.

30. In an Assignment and Assumption of Commercial Offer to Purchase Agreement, dated November 22, 2021, Northwoods assigns its interest in the CET Purchase Agreement to Plaintiffs.

### (ii) Onofrio Manipulates Davis into not Retaining Separate Legal Counsel

31. On October 7, 2021, Onofrio introduces Davis to Attorney Ashley M. Kemplin-Gamm and her paralegal, Andrea Evans, from Eckberg Lammers, P.C. by email.

32. Davis introduces and copies his Texas attorney, Anna Trimble, into the email communication stating she would be representing him as the buyer in the process.

33. Onofrio responds to the email chain, but does not include Attorney Trimble, informing Davis he should use Eckberg firm to make the transaction smoother as they are more familiar with how transactions are handled in Wisconsin, can handle all aspects, and is also who Davis's partner used in his transaction with Onofrio.

34. Onofrio further asserts that having another attorney involved "complicates things."

35. Onofrio and Davis further discussed the use of the Eckberg firm by phone and Davis eventually agreed not to involve Attorney Trimble.

### (iii) Onofrio Manipulates Financing and Appraisal

36. Onofrio was directly involved with selecting the appraiser and lender for the transaction.

37. On October 20, 2021, Onofrio informed Davis that an appraiser has been engaged.

38. On October 22, 2021 Onofrio informed Davis that there is significant interest from multiple banks.

39. In October and November of 2021, employees of Onofrio's company, Wild Moose Ventures, worked with Davis and his bookkeeper and accountant to secure the information banks recommended by Onofrio were requiring for the loan review and approval process.

40. Ultimately, at the recommendation of Onofrio, Plaintiffs worked with Citizens Community Federal National Association ("CCFNA") for potential financing.

41. As part of that process, CCFNA ordered an appraisal of the East Springs Drive Shopping Center.

42. The appraisal company retained by CCFNA was United Real Estate Corp. ("UREC") as arranged by Onofrio.

43. Leslie A. Grenzow is the appraiser at UREC that prepared an appraisal of the East Springs Drive Shopping Center.

44. Upon information and belief, as part her appraisal work, Grenzow communicated with Onofrio.

45. Upon information and belief, Onofrio misrepresented to Grenzow that Northwoods had the East Springs Drive Shopping Center under contract for price represented to Davis. Onofrio's statement to Grenzow was a lie.

46. Upon information and belief, Onofrio did not provide accurate and reliable information to Grenzow as part of the appraisal process.

47. The UREC Appraisal stated the value of the East Springs Drive Shopping Center was $12,900,000 as of November 5, 2021.

48. Just two years later, in October of 2023, Plaintiffs retained Colliers to provide a Marketing and Valuation Proposal of the East Springs Drive Shopping Center which identified a recommended list price of $8,631,553.

49. On or about May 1, 2025, Plaintiffs retained Scott Appraisal, LLC to provide a retrospective appraised value of East Springs Drive Shopping Center.

50. Scott Appraisal, LLC asserts that the East Springs Drive Shopping Center had a value of $11,700,000 as of November 29, 2021.

51. On November 29, 2021, CAP closed on the purchase of the East Springs Drive Shopping Center with CET.

52. Attached hereto as Exhibit D is a true and correct copy of the Buyer's Final Settlement Statement.

53. According to the Buyer's Final Settlement Statement, the Total Consideration to CET is $10,400,000.

54. According to the Buyer's Final Settlement Statement, CAP is charged an "Assignment Fee to Northwoods Management" in the amount of $2,450,000.

55. To pay the $12,850,000 purchase price, CAP obtained a $10,280,000 loan from CCFNA that was personally guaranteed by Davis (the "CCFNA Loan").

56. In addition, CAP obtained a $1,570,000 loan from Northwoods on November 29, 2021 that was personally guaranteed by Davis (the "Northwoods Note"). A true and correct copy of the Northwoods Note is attached hereto as Exhibit E.

57. Prior to closing, Onofrio unexpectedly wired $1,570,000 to Davis, which amount was promptly returned.

58. As additional security, CAP executed a mortgage for the benefit of Northwoods, under the agreement that it would only be recorded in the event Northwoods defaulted on the note to Northwoods.

59. CAP has not defaulted on the note to Northwoods.

60. Northwoods recorded the mortgage against the East Springs Drive Shopping Center on July 20, 2022 as Document No. 5849563. A true and correct copy of the recorded mortgage is attached hereto as Exhibit F.

61. Upon inquiring with Defendants about the recorded mortgage, they claim that payments in October and November of 2021 were not made and have not been cured.

62. According to the Northwoods Note, payments were to commence on December 29, 2021.

63. Despite bringing the fact to Defendants that payments were not due prior to December 29, 2021 and that all payments have been made, Defendants have failed and refused to release the mortgage.

64. On December 27, 2021, Karolina Kapral, an employee of Onofrio's company, Wild Moose Ventures, provided Davis with ACH forms to set up payments from CAP to Northwoods.

65. Davis provided the forms on December 27, 2021 but requested that payments not be drafted until he received confirmation on how he would receive payments from the management company.

66. Ms. Kapral confirmed receipt and acknowledged payments would be held pending further communication from Davis.

67. CAP was experiencing difficulties with the property management company collecting rent payments and depositing the funds into his account as well as communicating with

9

him. Both Davis and representatives of Onofrio's company, Wild Moose Ventures, worked with the management company to alleviate these issues.

68. During the course of working through the issues with the property management company, Onofrio's employee, Ms. Kapral advised Davis that the payments should not come out of his property operating account but rather his personal checking account despite the fact the Northwoods Note was with CAP.

69. After working out the initial issues with the property management company, CAP provided ACH forms on February 3, 2022 to bring payments on the Northwoods Note current and setting up ongoing ACH payments.

70. Prior to the November 29, 2021 closing, Defendants:

  a. Did not disclose to Plaintiffs the CET Purchase Agreement or CET Purchase Price;

  b. Did not disclose to Plaintiffs that Onofrio lied to the appraiser;

  c. Onofrio concealed the CET Purchase Agreement from Plaintiffs; and

  d. Coerced Plaintiffs into retaining Defendants' legal counsel to represent them in the transaction instead of retaining separate counsel.

71. The total amount paid to date under the Northwoods Note exceeds $75,000.

**Count 1 — Declaratory Judgment that the Northwoods Loan Documents are Void**

72. Plaintiffs restate and reallege the foregoing paragraphs as if fully set forth herein.

73. This Court has the power and authority to declare rights, status, and other legal relations of parties to a contract under Wis. Stat. § 806.04, *et seq*.

74. A contract that a party is fraudulently induced to enter into is voidable.

75. The elements for fraudulent misrepresentation are: (1) the defendant made a false representation of fact; (2) the defendant either knew the representation was false or asserts it as his

own knowledge without knowing whether it was true or false; (3) the defendant intended the plaintiff to rely on the representation; (4) the plaintiff was induced to act based on the representation; and (5) the false representation proximately caused damage to plaintiff.

76. Fraudulent misrepresentation also includes the concealment of a material fact. This occurs when one party knowingly conceals a material fact that is peculiarly within his own knowledge, and the other party relies on the presumption that the fact does not exist.

77. Onofrio and Northwoods, through Onofrio, made fraudulent misrepresentations or concealed material facts from Plaintiffs, including:

    a. After the introductory e-mail on August 19, 2021, Onofrio, in subsequent conversations, falsely represented to Davis that he was an experienced and successful real estate investor. Onofrio failed to disclose that he and Northwoods were actively involved in a scheme to defraud federally insured financial institutions and individual investors, such as Davis;

    b. Onofrio did not disclose to Plaintiffs that he lied to the appraiser regarding Northwoods' acquisition price; and

    c. Onofrio concealed the CET Purchase Agreement from Plaintiffs.

78. Onofrio knew his representations regarding Northwoods' purchase price or acquisition price for the East Springs Drive Shopping Center were not true.

79. Onofrio intended that Plaintiffs rely on his false representation regarding the purchase price to convince Plaintiffs, to enter into the Davis Purchase Agreement and Plaintiffs to enter into the Northwoods Loan Documents.

80. Onofrio concealed the material facts set forth above with the intention that Plaintiffs would rely on the presumption that the material facts did not exist, and Plaintiffs did so when they entered into the Davis Purchase Agreement and the Northwoods Loan Documents.

81. Plaintiffs reasonably relied on Onofrio's false representation regarding the CET Purchase Price and were induced to act and entered into the Davis Purchase Agreement and Northwoods Loan Documents.

82. Plaintiffs would never have entered into the Davis Purchase Agreement and Northwoods Loan Documents if Defendants had not made the misrepresentations and concealed the material facts set forth above.

83. Defendants' false representations and concealment of material facts proximately caused Plaintiffs' damages. Without Defendants' false representations and concealment of material facts, Plaintiffs would not have entered into the Davis Purchase Agreement or the Northwoods Loan Documents.

84. An actual and justiciable controversy exists between the Plaintiffs as to their respective legal rights and duties under the Northwoods Loan Documents and the validity of the Northwoods Loan Documents.

85. Based on the foregoing facts, Plaintiffs are entitled to a judgment of this Court declaring the Northwoods Loan Documents void and unenforceable and deeming the Mortgage recorded July 20, 2022 as Document No. 5849563 satisfied.

### Count 2 — Intentional Misrepresentation

86. Plaintiffs restate and reallege the foregoing paragraphs as if fully set forth herein.

87. A contract that a party is fraudulently induced to enter into is voidable.

88. The elements for fraudulent misrepresentation are: (1) the defendant made a false representation of fact; (2) the defendant either knew the representation was false or asserts it as his own knowledge without knowing whether it was true or false; (3) the defendant intended to deceive the plaintiff to rely on the representation; (4) the plaintiff was induced to act based on the representation; and (5) the false representation proximately caused damage to plaintiff.

89. Fraudulent misrepresentation also includes the concealment of a material fact. This occurs when one party knowingly conceals a material fact that is peculiarly within his own knowledge, and the other party relies on the presumption that the fact does not exist.

90. Onofrio and Northwoods, through Onofrio, made fraudulent misrepresentations or concealed material facts from Plaintiffs, including:

   a. After the introductory e-mail on August 19, 2021, Onofrio, in subsequent conversations, falsely represented to Davis that he was an experienced and successful real estate investor. Onofrio failed to disclose that he and Northwoods were actively involved in a scheme to defraud federally insured financial institutions and individual investors, such as Davis;

   b. Onofrio did not disclose to Plaintiffs that he lied to the appraiser regarding Northwoods' acquisition price; and

   c. Onofrio concealed the CET Purchase Agreement and CET Purchase Price from Plaintiffs.

91. Onofrio knew his representations regarding Northwoods' purchase price or acquisition price for the East Springs Drive Shopping Center were not true.

92. Onofrio intended that Plaintiffs rely on his false representation regarding the purchase price to convince Plaintiffs, to enter into the Davis Purchase Agreement and Plaintiffs to enter into the Northwoods Loan Documents.

93. Onofrio concealed the material facts set forth above with the intention that Plaintiffs would rely on the presumption that the material facts did not exist, and Plaintiffs did so when they entered into the Davis Purchase Agreement and the Northwoods Loan Documents.

94. Plaintiffs reasonably relied on Onofrio's false representation regarding the CET Purchase Price and were induced to act and entered into the Davis Purchase Agreement and Northwoods Loan Documents.

95. Plaintiffs would never have entered into the Davis Purchase Agreement and Northwoods Loan Documents if Defendants had not made the misrepresentations and concealed the material facts set forth above.

96. Defendants' false representations and concealment of material facts proximately caused Plaintiffs' damages. Without Defendants' false representations and concealment of material facts, Plaintiffs would not have entered into the Davis Purchase Agreement or the Northwoods Loan Documents.

97. Based on the foregoing facts, Plaintiffs are entitled to a judgment of this Court (a) declaring the Northwoods Loan Documents void and unenforceable, (b) deeming the Mortgage recorded July 20, 2022 as Document No. 5849563 satisfied, and (c) a judgment against the Defendants, jointly and severally, in the amount paid under the Northwoods Loan Documents, plus interest and an award of costs and disbursements.

## Count 3 — Negligent Misrepresentation

98. Plaintiffs restate and reallege the foregoing paragraphs as if fully set forth herein.

99. The elements for negligent misrepresentation are: (1) the defendant made a representation of fact; (2) that the representation of fact was untrue; (3) the defendant was negligent in making the representation by failing to exercise ordinary care; and (4) the plaintiff believed the representation to be true and relied on it to his damage.

100. Onofrio and Northwoods, through Onofrio, made numerous false representations or concealed material facts from Plaintiffs, including:

   a. After the introductory e-mail on August 19, 2021, Onofrio, in subsequent conversations, falsely represented to Davis that he was an experienced and successful real estate investor. Onofrio failed to disclose that he and Northwoods were actively involved in a scheme to defraud federally insured financial institutions and individual investors, such as Davis;

14

      b. Onofrio did not disclose to Plaintiffs that he lied to the appraiser regarding Northwoods' acquisition price; and

      c. Onofrio concealed the CET Purchase Agreement from Plaintiffs.

101. Onofrio knew his representations regarding Northwoods' purchase price or acquisition price for the East Springs Drive Shopping Center were not true.

102. Onofrio intended that Plaintiffs rely on his false representation regarding the purchase price to convince Plaintiffs, to enter into the Davis Purchase Agreement and Plaintiffs to enter into the Northwoods Loan Documents.

103. Onofrio concealed the material facts set forth above with the intention that Plaintiffs would rely on the presumption that the material facts did not exist, and Plaintiffs did so when they entered into the Davis Purchase Agreement and the Northwoods Loan Documents.

104. Plaintiffs reasonably relied on Onofrio's false representation regarding the CET Purchase Price and were induced to act and entered into the Davis Purchase Agreement and Northwoods Loan Documents.

105. Plaintiffs would never have entered into the Davis Purchase Agreement and Northwoods Loan Documents if Defendants had not made the misrepresentations and concealed the material facts set forth above.

106. Defendants' false representations and concealment of material facts proximately caused Plaintiffs' damages. Without Defendants' false representations and concealment of material facts, Plaintiffs would not have entered into the Davis Purchase Agreement or the Northwoods Loan Documents.

107. Based on the foregoing facts, Plaintiffs are entitled to a judgment of this Court (a) declaring the Northwoods Loan Documents void and unenforceable, (b) deeming the Mortgage recorded July 20, 2022 as Document No. 5849563 satisfied, and (c) a judgment against the

15

Defendants, jointly and severally, in the amount paid under the Northwoods Loan Documents, plus interest and an award of costs and disbursements.

## Count 4 — Unjust Enrichment

108. Plaintiffs restate and reallege the foregoing paragraphs as if fully set forth herein.

109. The elements of an unjust enrichment claim are: (1) a benefit conferred upon the defendant by the plaintiff; (2) knowledge or appreciation of the benefit by the defendant; and (3) acceptance and retention by the defendant of such benefit under such circumstances that it would be unfair for him or her to retain it without paying the value thereof.

110. Defendants received a benefit from Plaintiffs in the form of the monetary benefits received from the sale of the East Springs Drive Shopping Center or payments made under the Northwoods Loan Documents.

111. Defendants accepted the benefits from those transactions.

112. It would be inequitable and unjust for Defendants to retain payments under the Northwoods Loan Documents due to the fraudulent misrepresentations and fraudulent concealment of material facts set forth above.

113. Under the doctrine of unjust enrichment, Plaintiffs are entitled to a judgment against Defendants, jointly and severally, in the principal amount of at least $1,570,000.

## Count 5 — Violation of Wis. Stat. § 100.18

114. Plaintiffs restate and reallege the foregoing paragraphs as if fully set forth herein.

115. Wis. Stat. § 100.18(1) prohibits a "statement or representation of any kind to the public relating to such purchase . . . of such real estate . . . which . . . contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."

116. The prohibitions set forth in Wis. Stat. § 100.18(1) apply to oral representations made in private conversations to prospective purchasers.

117. Defendants used or employed fraud, unfair or unconscionable practices, false pretenses, false promises, misleading statements or deceptive practices, with the intent that Plaintiffs rely thereon in connection with the sale and purchase of the East Springs Drive Shopping Center and execution of the Northwoods Loan Documents.

118. Specifically, Onofrio and Northwoods, through Onofrio, employed fraud and made numerous false representations to Plaintiffs, including:

   a. After the introductory e-mail on August 19, 2021, Onofrio, in subsequent conversations, falsely represented to Davis that he was an experienced and successful real estate investor. Onofrio failed to disclose that he and Northwoods were actively involved in a scheme to defraud federally insured financial institutions and individual investors, such as Davis;

   a. Misrepresented to the appraiser that Northwoods had the East Springs Drive Shopping Center under contract for the "same price" as the price in the Davis Purchase Agreement, influencing the valuation of the appraisal;

   b. Concealed the CET Purchase Agreement from Plaintiffs; and

   b. Coerced Plaintiffs into retaining Defendants' legal counsel to represent them in the transaction instead of retaining separate counsel.

119. Onofrio knew his representations regarding Northwoods' purchase price or acquisition price for the East Springs Drive Shopping Center were not true.

120. Onofrio intended that Plaintiffs rely on his false representation regarding the purchase price to convince Davis to enter into the Davis Purchase Agreement and Plaintiffs to enter into the Northwoods Loan Documents.

121. Davis reasonably relied on Onofrio's false representation regarding the CET Purchase Price and were induced to act and entered into the Davis Purchase Agreement and Plaintiffs entered into the Northwoods Loan Documents.

122. Plaintiffs would never have entered into the Davis Purchase Agreement or Northwoods Loan Documents if Defendants had not made the misrepresentations and concealed the material facts set forth above.

123. Defendants' false representations and concealment of material facts proximately caused Plaintiffs' damages. Without Defendants' false representations and concealment of material facts, Plaintiffs would not have entered into the Davis Purchase Agreement or the Northwoods Loan Documents.

124. Based on the foregoing facts and in accordance with Wis. Stat. § 100.18(11), Plaintiffs are entitled to a judgment of this Court (a) declaring the Northwoods Loan Documents void and unenforceable, (b) deeming the Mortgage recorded July 20, 2022 as Document No. 5849563 satisfied, and (c) a judgment against the Defendants, jointly and severally, in the amount of $3,140,000, which is twice the amount paid under the Northwoods Loan Documents, in addition to their actual attorneys' fees and costs incurred in investigating and litigating this action.

## Count 6 — Slander of Title

125. Plaintiffs restate and reallege the foregoing paragraphs as if fully set forth herein.

126. In order to be able to pay the Davis Purchase Price, CAP entered into the $1,570,000 Northwoods Note.

127. As additional security, CAP executed a mortgage for the benefit of Northwoods, under the agreement that it would only be recorded in the event Northwoods defaulted on the note to Northwoods.

128. CAP has not defaulted on the note to Northwoods.

129. Northwoods recorded the mortgage against the East Springs Drive Shopping Center on July 20, 2022 as Document No. 5849563.

130. Upon inquiring with Defendants about the recorded mortgage, they claim that payments in October and November of 2021 were not made and have not been cured.

131. According to the Northwoods Note, payments were to commence on December 29, 2021.

132. Despite bringing the fact to Defendants that payments were not due prior to December 29, 2021 and that all payments have been made, Defendants have failed and refused to release the mortgage.

133. The Defendants' recorded mortgage interfered with Plaintiffs attempts to refinance the CCFNA mortgage.

134. As a direct and proximate consequence of Defendants' slander of title, Plaintiffs have sustained, and have a right to recover from Defendants, damages in an amount to be determined at trial.

135. In accordance with Wis. Stat. § 706.13(1), in addition to their actual damages, Plaintiffs are entitled to punitive damages in the amount of $1,000.

**WHEREFORE,** Plaintiffs request the following relief:

1. Enter a judgment declaring the mortgage against the East Springs Drive Shopping Center on July 20, 2022 as Document No. 5849563 satisfied;

2. Enter a judgment against Defendants, jointly and severally, in an amount to be determined at trial;

3. Award Plaintiffs punitive damages in the amount of $1,000;

4. Award Plaintiffs their actual attorneys' fees,

5. Award Plaintiffs their costs and disbursements incurred herein; and

6. Award Plaintiffs such other and further relief as the Court deems just and equitable

## JURY DEMAND

Plaintiffs hereby demand a jury trial as to the above case of action.

Dated this 4th day of December, 2025.

*Electronically signed by Jessica L. Puetz*
Jessica L. Puetz – State Bar No. 1122259
AMUNDSEN DAVIS, LLC
111 E. Kilbourn Avenue, Suite 1400
Milwaukee, WI 53202
Phone: (414) 225-1429
jpuetz@amundsendavislaw.com
