IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DARIN DAVIS and CHRISTIAN-ADAIR PARTNERS, LLC,

Plaintiffs & Counter Defendants,

v.

OPINION AND ORDER

NORTHWOODS MANAGEMENT LLC, and
,

25-cv-999-wmc

Defendant & Counter Claimant,

and

MATTHEW ONOFRIO,

Defendant.
.

Plaintiffs and counter defendants Darin Davis and Christian-Adair Partners, LLC ("CAP"), filed suit in this court based on diversity jurisdiction under 28 U.S.C. § 1332, claiming that in 2021, defendants and counter-claimants Northwoods Management LLC ("Northwoods") and Matthew Onofrio fraudulently induced them to enter into a contract and loan agreement to purchase commercial property in Madison, Wisconsin. (Dkt. #1.) In addition to seeking a declaratory judgment that Northwoods' loan documents are void, plaintiffs assert claims for intentional and negligent misrepresentation, unjust enrichment, violations of Wis. Stat. § 100.18, and slander of title. (*Id.*) For its part, Northwoods has asserted counterclaims for breach of contract and unjust enrichment against plaintiffs. (Dkt. #11.)

Currently pending before the court is defendants' motion to dismiss plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6) on the grounds that: (1) all of plaintiffs' claims are barred under the applicable statute of limitations; and alternatively, (2) plaintiffs neither plead

their fraud claims with sufficient particularity, nor satisfy the amount-in-controversy requirement to establish diversity jurisdiction for their remaining non-fraud claim.[1] (Dkt. #6.) For the reasons below, the court will deny the motion to dismiss.

## ALLEGATIONS OF FACT[2]

### A. Background

Plaintiff Darin Davis is a resident of Austin, Texas, and the sole member of plaintiff Christian-Adair Partners, LLC ("CAP"), a Texas limited liability company. Defendant Matthew Onofrio is a resident of Minneapolis, Minnesota, with an ownership interest in defendant Northwoods Management, LLC.

On August 19, 2021, Davis's business partner introduced him to Onofrio via email, noting that Davis "might be in need of some bonus depreciation this year" and that he was "buying a building through [Onofrio]" that had not yet closed but was going smoothly. (Dkt. #1, at ¶ 19.) Onofrio and Davis then began communicating directly by phone and

[1] Defendants do not dispute, and this court is satisfied, that the parties are citizens of different states: plaintiffs Davis and Christian-Adair Partner, an LLC with Davis as its sole member, are both Texas citizens (*see* dkt. ##1, 11), *Page v. Democratic Nat'l. Comm*., 2 F.4th 630, 635 (7th Cir. 2021)(citizenship of LLC is based on citizenship of its members); defendant Onofrio is a citizen of Minnesota (*see* dkt. #17); and defendant Northwoods, an LLC with Steadfast Irrevocable Trust as its sole member, and Nevada Trust Company as the trustee, is a citizen of Nevada (*see* dkt. ##11, 17, *Hemenway v. Peabody Coal Co*., 159 F.3d 255, 257 (7th Cir. 1998) (citizenship of trust based on citizenship of trustee).

[2] In resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint and the documents attached to it (dkt. #1), as well as all court records and other matters of public record, not only as true but viewed in a light most favorable to plaintiff, including drawing all inferences in plaintiff's favor. *Guerrero v. Howard Bank*, 74 F.4th 816, 819 (7th Cir. 2023); *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022); *Killingsworth v. HSBC Bank Nev*., 507 F.3d 614, 618 (7th Cir. 2007).

e-mail about the purchase of a commercial property located on East Springs Drive in Madison, Wisconsin, and on September 21, 2021, Onofrio further confirmed that Davis could contribute $1 million and bring in more partners toward that purchase.

**B. Purchase of East Springs Drive Property**

Effective September 29, 2021, Northwoods entered into a commercial offer to purchase agreement with Capitol East Towne, LLC ("CET") for a shopping center at 2302-2348 East Springs Drive in Madison, Wisconsin. Onofrio never provided Davis with a copy of the original CET purchase agreement, but the alleged original purchase price was $10,400,000. Then, on October 5, 2021, Onofrio presented the East Springs Drive property to Davis as a "strong retail investment" at a purchase price of $12,850,000, after which Northwoods entering into a commercial offer to purchase agreement with Davis on the same day. Davis's purchase agreement listed the purchase price as $12,850,000.

While Davis initially introduced his attorney, Andrea Trimble, to Onofrio and Onofrio's attorney at Eckberg Lammers, P.C., via email on or around October 7, 2021, Onofrio told Davis in a private email that he should use the Eckberg firm to make the transaction smoother as it was more familiar with how transactions are handled in Wisconsin and having another attorney would only complicates things. After further discussions with Onofrio, Davis then agreed not to involve Attorney Trimble.

On October 20, 2021, Onofrio next informed Davis that he had hired an appraiser; and two days later, he told Davis that multiple banks were interested in financing the purchase. Then, also at the recommendation of Onofrio, plaintiffs worked with Citizens Community Federal National Association ("CCFNA") for potential financing, which in turn retained

United Real Estate Corp. ("UREC") to perform the appraisal. According to plaintiffs, defendant Onofrio lied to the UREC appraiser, Leslie A. Grenzow, affirmatively misrepresenting that Northwoods had the shopping center under contract for $12,900,000, which was the price Davis agreed to pay, even though Northwoods had already agreed to purchase the property from CET for $10,400,000.

On November 5, 2021, UREC stated that the value of the East Springs Drive Shopping Center was $12,900,000. In an "Assignment and Assumption of Commercial Offer to Purchase Agreement," dated November 22, 2021, Northwoods assigned its interest in the CET Purchase Agreement to Davis and CAP. A week later, on November 29, 2021, plaintiff CAP closed on the purchase of the East Springs Drive Shopping Center with CET. However, according to the buyer's final settlement statement, CAP was charged "total consideration" in the amount of $10,400,000 and a "Miscellaneous Disbursement" of an "Assignment Fee to Northwoods Management" in the amount of $2,450,000. (Dkt. #1-4.) To pay the $12,850,000 purchase price, CAP obtained a $10,280,000 loan from CCFNA and a $1,570,000 loan from Northwoods, both of which Davis personally guaranteed. Prior to closing, Onofrio then unexpectedly wired $1,570,000 to Davis, which he promptly returned.

### C. The Northwoods Mortgage

As additional security, plaintiff CAP executed a mortgage for the benefit of defendant Northwoods, agreeing that mortgage would only be recorded in the event CAP defaulted on its loan from Northwoods. Even though CAP did not default on the loan, Northwoods proceeded to record the mortgage against the East Springs Drive Shopping Center on July 20, 2022. While defendants maintain that no payments were made for October and November 2021, the

loan documents state that payments were to commence on December 29, 2021. Nonetheless, Northwoods has refused to release CAP's mortgage.

Meanwhile, on December 27, 2021, Karolina Kapral of Wild Moose Ventures, one of Onofrio's companies, provided Davis with forms to set up automatic mortgage payments from CAP to Northwoods. Davis provided the forms on December 27, 2021, requesting that payments not be drafted until he received confirmation as to how he would receive payments from the management company. Kapral then confirmed receipt of this request and acknowledged payments would be held pending further confirmation from Davis.

However, CAP was experiencing difficulties with the property management company responsible for collecting rent payments and depositing the funds into its account, as well as communicating with the property manager. While Davis and representatives of Wild Moose Ventures worked with the management company to address these issues, Kapral also advised Davis the payments should not come out of his property operating account, but rather out of his personal checking account, despite the fact the Northwoods note was with CAP and not Davis. After working out the initial issues with the property management company, CAP executed automatic payment forms on February 3, 2022, bringing payments on the Northwoods note current and setting up ongoing payments.

### D. Subsequent Criminal Charges and Property Valuation

On November 17, 2022, a grand jury in the District of Minnesota, Case No. 22-cr-322, returned an indictment against Onofrio for three counts of bank fraud in violation of 18 U.S.C. § 1344. (Dkt. #1-1.) On July 10, 2023, Onofrio pleaded guilty to one of those three counts, admitting that from 2019 to 2022, he had devised and executed a scheme to defraud federally-

insured financial institutions in Minnesota, Wisconsin and other states by using false and fraudulent pretenses, misrepresentations, and omissions of material fact, which resulted in losses totaling at least $35,745,252.91. (Dkt. #1-2.)

In October 2023, plaintiffs retained Colliers, which provided a marketing and valuation proposal of the East Springs Drive Shopping Center, recommending a list price of $8,631,553. On or about May 1, 2025, plaintiffs also retained Scott Appraisal, LLC, which provided a "retrospective" appraised value of East Springs Drive Shopping Center in the amount of $11,700,000 as of November 29, 2021.

## OPINION

Plaintiffs have asserted Wisconsin state law claims for intentional and negligent misrepresentation, unjust enrichment, violations of Wis. Stat. § 100.18, and slander of title.[3] Defendants move to dismiss these claims on the ground that they are barred by the statute of limitations, and alternatively, that plaintiffs failed to plead their fraud claims with sufficient particularity and have not satisfied the amount-in-controversy requirement with respect to their slander of title claim. For the reasons below, the court concludes that dismissal is not warranted on the first two grounds, making it unnecessary to address defendants' third ground.

[3] "Slander of title exists under Wisconsin law in both common law and statutory form, and its elements are largely the same under either: 'A knowingly false, sham, or frivolous claim of lien or any other instrument relating to real or personal property filed, documented or recorded which impairs title is actionable in damages.'" *Niedert v. Rieger*, 200 F.3d 522, 528 (7th Cir. 1999) (citing *Kensington Dev. Corp. v. Israel*, 142 Wis. 2d 894, 902, 419 N.W.2d 241, 244 (1988); Wis. Stat. § 706.13(1)).

**I. Statute of Limitations**

The parties agree that a court sitting in diversity must apply the statutes of limitations of the forum state. *Evans ex rel. Evans v. Lederle Labs.*, 167 F.3d 1106, 1111-12 (7th Cir. 1999) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 109-10 (1945)). In Wisconsin, fraud-based claims and claims based on liability created by statute when a different limitation is not prescribed by law must be filed within three years after the cause of action accrues. Wis. Stat. §§ 893.93(1m)(a) and (b). Fraud claims "accrue" when the aggrieved party "discovers the facts constituting the alleged fraud," meaning the aggrieved party "finds out enough [information] to cause a reasonable [person] to make sufficient inquiries to discover the fraud." *Owen v. Wangerin*, 985 F.2d 312, 315 (7th Cir. 1993) (citing *O'Dell v. Burnham*, 61 Wis. 562, 21 N.W. 635, 639 (1884); *Milwaukee W. Bank v. Lienemann*, 15 Wis. 2d 61, 65, 112 N.W.2d 190, 192 (1961)).

Plaintiffs need not have *complete* knowledge of the ultimate fact of fraud for a cause of action to accrue; instead, courts are to focus on the point at which plaintiffs possessed "essential facts" [which] if diligently investigated, [would] disclose the fraud." *Milwaukee W.*, 15 Wis. 2d at 65, 112 N.W.2d at 192. Whether the falsity of a statement could have been discovered depends on "all of the circumstances" surrounding the transaction, "including the intelligence and experience of the misled individual and the relationship between the parties, to determine whether the individual acted reasonably when relying on the misrepresentation." *Bank of Sun Prairie v. Esser*, 155 Wis. 2d 724, 734, 456 N.W.2d 585, 589 (1990) (citing *Ritchie v. Clappier*, 109 Wis. 2d 399, 405-06, 326 N.W.2d 131, 134 (1982)). Accordingly, whether falsity is obvious is usually a question of fact. *Hennig v. Ahearn*, 230 Wis. 2d 149, 170, 601 N.W.2d 14,

24 (Ct. App. 1999) (citing *Williams v. Rank & Son Buick, Inc.*, 44 Wis. 2d 239, 246, 170 N.W.2d 807, 811 (1969)).

Similarly, "defenses based on applicable statutes of limitations are rarely resolved at the motion-to-dismiss stage because 'a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations.'" *Est. of Mouradian by Mouradian v. Jackson Cnty.*, No. 23-cv-167-wmc, 2024 WL 1675039, at *3 (W.D. Wis. Apr. 18, 2024) (quoting *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017)); *see also Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) ("A statute of limitations defense, while not normally part of a motion under Rule 12(b)(6), is appropriate where 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely.'"). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). "Put another way, a complaint can only be dismissed as untimely where the facts alleged in the complaint establish an 'impenetrable' statute of limitations defense. *Mouradian*, 2024 WL 1675039, at *3 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008)).

Nevertheless, defendants move to dismiss based on the assertion that plaintiffs should have discovered their alleged fraud by at least November 29, 2021, when Davis executed the buyer's final settlement statement, which included two line items showing that CET would be paid $10,400,000 in "total consideration" and Northwoods would be paid an "assignment fee"

of $2,450,000. (*See* dkt. #1-4.) Because plaintiffs did not file their complaint in this court until December 2025, more than four years after this statement, defendants contend that plaintiffs' fraud claims are all barred by the three-year statute of limitations. In response, plaintiffs contend that at the time of the November 2021 closing, Davis still lacked the requisite facts that would have prompted a reasonable person to make inquiries to uncover defendants' fraud. In fact, plaintiffs affirmatively allege that Onofrio *hid* his fraud from them by: claiming to be an experienced and successful real estate agent when he in fact was actively running a fraud scheme; concealing the details of the actual CET sales transaction from Davis; coercing Davis into retaining defendants' legal counsel instead of his own, independent counsel; misrepresenting the East Springs Drive Shopping Center as a strong retail investment at a purchase price of $12,850,000; *and* misrepresenting the purchase price to the bank's appraiser, who listed the value of the shopping center at $12,900,000, just above the asking price, rather than the actual sale price of $10,400,000 to CET. Indeed, plaintiffs contend that their claims did not accrue until a few months after Onofrio's conviction in July 2023, when Colliers valued the property in October 2023 at an amount well-below what CAP had paid for it.

While defendants assert that the closing documents surrounding the November 2021 sale should have revealed the essential facts to the claimed fraud, if diligently investigated, this alone does not create an "impenetrable" statute of limitations defense. Based on the allegations in the complaint, it is possible that a reasonable purchaser would not have had reason to question whether the transaction was fraudulent, assuming instead that the unexplained, line items listing the total consideration and disbursement of an assignment fee reflected a separate

debt CET owed Northwoods.[4] Because there is no indication on the face of plaintiffs' complaint or the documents attached to it that plaintiffs had all the essential facts about the alleged fraud *and* failed to exercise reasonable diligence to investigate them, dismissal on statute of limitations grounds is not appropriate on factual allegations alone and is best left to established undisputed facts at summary judgment or trial. *Mouradian*, 2024 WL 1675039, at *6 (finding similar). Accordingly, defendants' motion is denied on this ground.

## II. Sufficiency of Fraud Allegations

"Under Wisconsin law, a claim for fraud has five elements: (1) the defendant made a factual representation; (2) which was untrue; (3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (4) the defendant made the representation with intent to defraud and to induce another to act upon it; and (5) the plaintiff believed the statement to be true and relied on it to his/her detriment." *Land's End, Inc. v. Remy*, 447 F. Supp. 2d 941, 952 (W.D. Wis. 2006); *see also Doe 67C v. Archdiocese of Milwaukee*, 2005 WI 123, ¶ 50 n.10 ("We use 'intentional misrepresentation,' and 'fraudulent misrepresentation,' and 'fraud' interchangeably.") (alteration adopted). Moreover, plaintiffs must plead fraud claims "with particularity," meaning that the allegations "must specify the particular individuals who made the representations and the details of where and when the misrepresentations were made, and who the misrepresentations were made to." *Doe*, 2005 WI 123, ¶ 52; *see also* Wis. Stat. § 802.03 (all averments of fraud must be stated with particularity); Fed. R. Civ. P. 9(b) (requiring plaintiff to "state with particularity the

[4] This is not to discount the significance of Davis signing the settlement statement in November 2021, apparently without questioning the meaning of the "assignment fee" to Northwoods. Drawing all reasonable inferences in Davis's favor, however, the court cannot conclude that a reasonable purchaser should have questioned whether the transaction was fraudulent.

circumstances constituting fraud"). In this way, "[p]recision and some measure of substantiation" must be injected into the fraud allegations. *United States ex rel. Presser v. Acacia Mental Health Clinic*, LLC, 836 F.3d 770, 776 (7th Cir. 2016). Still, courts should not take an "overly rigid view" of the particularity requirement and the requisite information to plead a claim of fraud "may vary on the facts of a given case." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co*., 631 F.3d 436, 442 (7th Cir. 2011).

Defendants argue plaintiffs have failed to state with any particularity a false statement or omission that they reasonably relied on in entering into either the purchase agreement or the Northwoods mortgage note, but instead merely allege the following:

- "Plaintiffs reasonably relied on Onofrio's false representation regarding the CET Purchase Price and were induced to act and entered into the Davis Purchase agreement and Northwoods Loan Documents." (Dkt. #1, at ¶¶ 81, 94, 104, and 121.)

- "Upon information and belief, Onofrio misrepresented to Grenzow that Northwoods had the East Springs Drive Shopping Center under contract for price [sic] represented to Davis. Onofrio's statement to Grenzow was a lie." (*Id*. at ¶ 45.)

(Dkt. #21, at p. 5.) According to defendants, these allegations neither identify any particular statement Onofrio made about the CET purchase price, nor state where and when the statement to Grenzow was made, nor even how plaintiffs even knew about the alleged misrepresentation to Grenzow. However, as plaintiffs point out, their complaint contains several factual allegations about the who, what, to whom, and how of the fraud, including:

- Onofrio statement to Davis on October 5, 2021, that the property was a "strong retail investment" at an asking price of $12,850,000, and Davis' subsequent reliance on that price in executing his purchase agreement for the property. (Dkt. #1, at ¶¶ 26-28.)

- Onofrio failing to disclose his offer to purchase agreement with CET for $10,400,000 before or at the time of the closing. (*Id*. at ¶ 23.)

- Onofrio misrepresented to Davis in October 2021, that using his own attorney for the transaction would only "complicate things." (*Id*. at ¶¶ 31-35.)

- Onofrio selected both the bank and an appraiser, to whom he allegedly made false representations about the purchase price soon after October 20, 2021, led to an artificially-inflated appraisal amount on November 5, 2021. (*Id*. at ¶¶ 40-47).

As such, plaintiffs here alleged a sufficiently detailed and coherent narrative of fraud by Onofrio and his entity, Northwoods, to get by the pleading stage. In particular, the complaint clearly describes: various allegedly false and misleading statements; who had ultimate authority to make those statements; when they were made; how they were false and misleading; and to whom they were communicated. Because these allegations state with particularity the circumstances constituting the alleged fraud, they meet the pleading standard for fraud. Accordingly, defendants' motion to dismiss on this ground also fails.

ORDER

IT IS ORDERED that defendants' motion to dismiss (dkt. #6) is DENIED.

Entered this 19th day of October, 2026.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge